UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CANTON

| | |
|---|---|
| IN RE: | ) CHAPTER 13 |
| | ) |
| LAURIE ANN KRASKA | ) CASE NO. 11-63013 |
|  *aka* LAURIE A. NIBLICK | ) |
| | ) JUDGE RUSS KENDIG |
|     Debtor | ) |
| | ) MOTION TO ALTER OR AMEND JUDGMENT |
| | ) RE: Memorandum of Opinion [Docket # 29] and |
| | ) Order Granting Relief [Docket # 30] |
| | ) |
| | ) PROPERTY ADDRESS: |
| | ) ** 697 West Wayne Avenue |
| | )    Wooster, Ohio  44691 |

AURORA BANK FSB, ("AURORA"), hereby moves this Court, pursuant to Rule 59 of the Federal Rules of Civil Procedure, made applicable herein by virtue of Rule 9023 of the Federal Rules of Bankruptcy Procedure, for an Order Altering or Amending the Order Granting Relief from Stay and Co-Debtor Stay which was entered on April 13, 2012, to include a waiver of Federal Rule of Bankruptcy Procedure 3002.1 for AURORA and the Chapter 13 Trustee, or, in the alternative, for the Order to state that the granting of relief from stay under §362 renders the aforementioned rule inapplicable, or, in further alternative, that Rule 3002.1 does not apply, as it is not provided for under §1322(b)(5) in the Debtor's Chapter 13 plan.

In support thereof, AURORA submits the following:

**FACTS**

1. The Debtor resides at and is in possession and use of the property located at 697 West Wayne Avenue, Wooster, Ohio 44691 ("REAL ESTATE").

2. AURORA has a secured claim against the Debtor, in the principal sum of $171,782.32 plus interest at the rate of 5.0% from July 1, 2011.  Said claim is secured by a first mortgage on the REAL ESTATE, with a pre-petition delinquency of $6,966.60.

3. The Debtor's Chapter 13 plan provides for surrender of the REAL ESTATE and gives the Creditor twelve months from the filing of the plan to sell the REAL ESTATE and file a deficiency claim. The Chapter 13 plan does not provide for on-going monthly mortgage payments to be made by either the Chapter 13 Trustee or the Debtor to AURORA, nor does it provide for payment of any arrearages that existed at the time of the bankruptcy filing. AURORA did not object to the treatment or the timeline provided for in the plan with regard to the sale of the REAL ESTATE or the filing of a deficiency claim.

4. AURORA filed its Motion for Relief from Stay and Co-Debtor Stay ("Motion") on March 1, 2012. The deadline to file a response to the Motion was April 4, 2012. No response was filed to the Motion by either the Debtor or the Trustee and no Notice of Deficiency was entered on AURORA'S Motion by this Honorable Court. As such, the standardized form Order for Relief from Stay was uploaded for Court approval on April 6, 2012. The Motion did, however, request a waiver of Rule 3002.1, and the proposed Order contained the requested waiver as well.

5. The request for waiver of the requirements of Rule 3002.1 was properly pled in the Motion, was bolded as required, as it was additional language not in the mandated form, and was further noted in the prayer of the Motion. As such, all parties were given notice of AURORA'S intent to request that AURORA and the Chapter 13 Trustee not be held to the requirements of the Rule. No response was filed by any party in interest opposing AURORA'S request.

6. On April 13, 2012, a Memorandum of Opinion ("Opinion") (Docket # 29) denying the requested waiver of FRBP 3002.1 was entered by this Court, and shortly thereafter an Order granting AURORA'S Motion was entered (Docket # 30) with the waiver language stricken.

## **LAW AND ARGUMENT**

**This Court's Order of April 13, 2012, should be altered or amended pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure, which adopts Rule 59(e) of the Federal**

**Rules of Civil Procedure to determine that FRBP 3002.1 is inapplicable as it relates to AURORA and Chapter 13 Trustee.**

Rule 59(e) of the Federal Rules of Civil Procedure states in pertinent part, "**(e) Motion to Alter or Amend Judgment**. Any motion to alter or amend a judgment shall be filed no later than 28 days after entry of the judgment", but Federal Rule of Bankruptcy Procedure 9023 gives only 14 days to file such a motion in a Bankruptcy case.

While the rule itself provides no standard for when the court may grant a motion under Rule 59(e), the courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; (3) to correct and clear an error of law or to prevent a manifest injustice. In Re: Continental Holdings, Inc. 170 B.R. 919, 933 (Bkrtcy. N.D. Ohio 1994).

In the within case, the Court should determine that Rule 3002.1 should be inapplicable to AURORA and the Chapter 13 Trustee. To rule otherwise would be an error of law and a manifest injustice to AURORA. Requiring AURORA and the Chapter 13 Trustee to comply with Rule 3002.1 after relief from stay is granted is likely to result in confusion, delay, and added cost to AURORA and the Chapter 13 Trustee. The Rule is drafted to apply to mortgages on principal residences which are provided for under 1322(b)(5) of the Code. AURORA contends that it is not provided for in the plan under 1322(b)(5) of the Code and as such should not be subject to the requirements of Rule 3002.1.

**Application of Rule 3002.1**

Rule 3002.1(a) states that "This rule applies in a chapter 13 case to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under §

1322(b)(5) of the Code in the debtor's plan." AURORA contends that in this case, the REAL ESTATE is not provided for under § 1322 (b)(5) of the Code, as that section states, in pertinent part, that the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim . . .". Thus, the Rule requires that in order for § 1322(b)(5) to apply, both conditions of the Code must be met – the plan must provide for both the curing of the pre-petition default within a reasonable time and regular monthly mortgage payments. In this case, the plan provides for neither a cure of the default, nor maintenance of payments during the pendency of the case, as the Debtor proposes to surrender the REAL ESTATE.

The Second Circuit Court of Appeals in In re Taddeo discussed the meaning of "curing a default" as it relates to a Chapter 13 plan. That Court noted that:

> the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences-here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.

In re Taddeo, 685 F.2d 24, 26-27 (2d Cir. 1982). Under this definition of cure, 1322(b)(5) requires a de-acceleration of the debt, and a restoration to the pre-default conditions, which does not occur in a case where the property is being surrendered.

Furthermore, this Court's Opinion claims that "Aurora Bank will be filing a claim." The filing of an unsecured deficiency claim, however, cannot be equated to the curing of a default. The fact that an unsecured deficiency claim may be filed is irrelevant, as the debtor-creditor relationship is not restored to the pre-default conditions. In this case, the relationship between the Debtor and Creditor is not restored, and as such, a deficiency claim should not be construed to be a cure, as such a claim would not trigger a de-acceleration of the debt.

As stated in this Court's Opinion, Rule 3002.1 "is targeted to individual chapter 13 debtors with mortgages covered by 11 U.S.C. § 1322(b)(5) and 'is designed to insure that individual debtors and trustees obtain information necessary to deal appropriately with creditor claims,'" citing Eugene R. Wedoff, Proposed New Bankruptcy Rules on Creditor Disclosure and Creditor Enforcement of the Disclosures—Open for Comment, 83 Am.Bankr.L.J. 579, 582 (2009). In the present case, since there is no treatment under 1322(b)(5), neither the Debtor nor the Trustee need deal with any creditor claim with regard to the REAL ESTATE as the Debtor intends to surrender the REAL ESTATE and has not provided for payments to be made either directly by the Debtor or inside the plan by the Trustee.

Additionally, 11 U.S.C. § 1322(b)(5) applies only where "*the last payment is due after the date on which the final payment under the plan is due.*" (*italicized* for emphasis). In this case, since the Debtor is surrendering the REAL ESTATE the loan remains accelerated and consequently the entire balance is presently due and owing. The filing of an unsecured deficiency claim further evidences the fact that there would be no payments due and owing after the discharge and closing of the case, as the final payment due on AURORA'S unsecured claim must be paid by the Chapter 13 Trustee inside the plan and under the terms of the confirmed plan. Therefore, AURORA'S claim does not fall under the provision of 11 U.S.C. § 1322(b)(5) and as such should not be subject to the requirements of Rule 3002.1.

This Court's Opinion further states in pertinent part, that:

> [t]he rule is intended to provide the mortgagor-debtor information necessary to determine the exact amount needed to cure any pre-petition arrearage and the amount of the postpetition payments. . . debtors often do not learn until after completing a chapter 13 plan that the mortgage payments have changed. . . [a]s a result, debtors may face renewed foreclosure proceedings immediately after emerging from bankruptcy.

The Opinion speaks to a situation where the Debtor intends to remain in the REAL ESTATE and has provided for the curing of arrearages and monthly maintenance payments in the Chapter 13 plan. Again, that argument is not applicable in this case as the intent of the Debtor is to surrender the property. According to the Debtor's confirmed plan, the Debtor is not providing for cure or monthly payments and is anticipating that the property will be sold during the pendency of the case, and as such she will not be facing renewed foreclosure proceedings after the bankruptcy is completed.

### Effect of Relief from Stay

The Bankruptcy Code, under 11 U.S.C § 362(c)(1), provides that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate". Upon the entry of the Order Granting Relief from Stay entered on April 13, 2012 (Docket #30), filed pursuant to 11 U.S.C § 362 (d), the REAL ESTATE no longer constituted property of this bankruptcy estate. The effect of the relief order is that the debt is no longer an obligation of the Debtor under the terms of the confirmed Chapter 13 plan, and will not receive payments from the Chapter 13 Trustee or from the Debtor. Necessarily, it follows that the relief from stay order means § 1322(b)(5) no longer applies. To require the Creditor to remain subject to the requirements of Rule 3002.1 hardly appears to be just where the Debtor is under no obligation to adequately protect the Creditor's interest in the REAL ESTATE.

### Requiring compliance with Rule 3002.1 is burdensome to the Creditor and the Chapter 13 Trustee and potentially to the Debtor

FRBP 3002.1 requires a creditor to make numerous post-petition filings that could prove to be burdensome to not only the Creditor, but to the Chapter 13 Trustee, and potentially the Debtor as well. 3002.1(b) requires the filing of Notice of Payment Changes be filed and served upon the Debtor, Debtor's counsel, and the Trustee noting any change in the payment as a result

of an interest rate adjustment or an escrow advance and requires the notice to be filed no later than 21 days before the new payment is due. In a Debtor surrender situation, the creditor is not expecting monthly payments to be made by the Debtor, and in fact, cannot ask for payments from the Debtor without being subject to a stay violation. As such the Notice of Payment Change is unnecessary and burdensome. Further, it is also not expected that a Debtor would continue to make payments for taxes and insurance when the intent is to surrender the home back to the lender. As such, taxes and insurance premiums are likely to be paid by the Creditor and the monthly payment would need to be adjusted and noticed accordingly. Additionally, a Notice of Payment Change post relief could result in the Trustee inadvertently disbursing payments to the Creditor which could result in confusion and problems with plan funding.

Another consequence of advancing taxes and/or insurance on surrendered property is the Creditor would be required under 3002.1(c) to file a Notice of Fees, Expenses, and Charges. In addition to taxes and insurance, the Creditor will incur costs in the foreclosure case. The creditor would be required to file every 180 days, a notice of all recoverable costs and pursuant to subsection (d), must do so in the form of a supplemental proof of claim. This raises the question of whether that supplemental claim should be paid by the Chapter 13 Trustee, or would the Debtor be required to file an objection to the claim in order for it not to be paid. All parties in interest may be subject to incurring unnecessary costs if they are subject to the Rule's requirements, and payment of these post-petition costs could result in a deficiency in plan funding.

Furthermore, subsection (f) of the Rule requires the Chapter 13 Trustee to file a Notice of Final Cure at the conclusion of the Chapter 13 Plan, stating that the Trustee *has* paid in full the amount required to cure any default on the claim. The way the Rule is written does not give the Trustee the option as to whether or not to send this Notice, and does not provide an exception for

when relief from stay is granted prior to payment of the amount required to cure any default on the claim. The Rule plainly says the Trustee must state that the default *was* paid, despite it not actually being paid, either in full or in part. While no claim has yet been filed, this Court's Opinion stating that an unsecured deficiency claim makes the Creditor subject to 3002.1 would require the Trustee to issue a Notice of Final Cure upon completion of the plan stating that she has cured the default on the claim. This result is at odds with the reality of the situation, but is the required result of the way in which the rule was constructed. If the Trustee does not file any such Notice of Final Cure, the Debtor has the option to file the Notice. However, neither the Trustee nor the Debtor could file such a Notice in good faith, stating that the default on the claim has been paid in full where no payments are to be made to the Creditor, except for a potential deficiency claim (if timely filed). Therefore, the requirement that such Notice be filed is of no benefit to any party, and makes no sense.

The most damaging language of the Rule to the Creditor is subsection (i). The Creditor could be subject to paying "reasonable expenses and attorney's fees" should the creditor fail to properly notify the Debtor, Debtor's counsel, and the Trustee of the above notices under (b)(c) or (g). The awarding of fees under this section, based on the foregoing arguments, especially on surrendered property, would be simply unjust.

## **CONCLUSION**

For the foregoing reasons AURORA respectfully requests that this Court alter or amend the Order Granting Relief from Stay and Co-Debtor Stay dated April 13, 2012, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to:

1. include a waiver of Rule 3002.1;
2. include language stating that Rule 3002.1 does not apply upon the granting of relief from stay under §362(d); OR

3. include language stating that Rule 3002.1 is inapplicable as to AURORA and the Chapter 13 Trustee, as it is not provided for in the plan pursuant to §1322(b)(5).

WHEREFORE, AURORA prays that this Court order that the Order Granting Relief from Stay and Co-Debtor Stay entered April 13, 2012 be altered or amended pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, made applicable herein by virtue of Rule 9023 of the Federal Rules of Bankruptcy Procedure, to include additional language providing for:

1. a waiver of Rule 3002.1;

2. stating that Rule 3002.1 does not apply upon the granting of relief from stay under §362(d); OR

3. stating that Rule 3002.1 is inapplicable as to AURORA and the Chapter 13 Trustee, as it is not provided for in the plan pursuant to §1322(b)(5);

that this Court hold a hearing on this matter; and that this Court grant such other and further relief as it deems proper.

Respectfully submitted,

/s/ Faye D. English
REIMER, ARNOVITZ, CHERNEK & JEFFREY
Faye D. English #0075557
Edward A. Bailey #0068073
P.O. Box #968
Twinsburg, Ohio 44087
330-425-4201
Fax 330-425-2155
fenglish@reimerlaw.com
Attorneys for AURORA

# CERTIFICATE OF SERVICE

I certify that on April 27, 2012, a copy of this Motion was electronically transmitted via the Court's CM/ECF system to the following who are listed on the Court's Electronic Mail Notice List:

1. Office of the U.S. Trustee

2. Toby Rosen, Chapter 13 Trustee
   Rob Harbert, Staff Counsel
   lweir@chapter13canton.com

3. John R Bates, Esq., Attorney for Debtor
   batesfirmecf@gmail.com
   Attorney for Debtor

I hereby certify that the following were served by mailing the same by ordinary U.S. mail, postage prepaid, to the persons listed below:

4. Laurie Ann Kraska, Debtor
   PO Box 241
   Smithville, Ohio 44677

5. Wayne County Treasurer
   Wayne County Treasurer's Office
   428 West Liberty Street
   Wooster, Ohio 44691

6. Joseph P. Kraska III
   PO Box 241
   Smithville, Ohio 44677

/s/ Faye D. English
REIMER, ARNOVITZ, CHERNEK & JEFFREY
Faye D. English #0075557
Edward A. Bailey #0068073
P.O. Box #968
Twinsburg, Ohio 44087
330-425-4201
Fax 330-425-2155
fenglish@reimerlaw.com
Attorneys for AURORA